**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-6544**

---

UNITED STATES OF AMERICA,

　　　　　Plaintiff – Appellant,

　　v.

ABDI RAZAQ ABSHIR OSMAN, a/k/a Abdirasaq Abshir,

　　　　　Defendant – Appellee.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, Senior District Judge.  (2:10-cr-00057-RAJ-DEM-5)

---

Argued:  January 26, 2024　　　　　　　　　　Decided:  August 2, 2024

---

Before DIAZ, Chief Judge, and KING and HEYTENS, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED:**　Joseph Attias, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant.  Lawrence Hunter Woodward, Jr., RULOFF, SWAIN, HADDAD, MORECOCK, TALBERT & WOODWARD, P.C., Virginia Beach, Virginia, for Appellee.  **ON BRIEF:**  Matthew G. Olsen, Assistant Attorney General, Jeffrey M. Smith, National Security Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Federal prisoner Abdi Razaq Abshir Osman — a Somali national convicted of piracy and sentenced to a mandatory life term — sought relief by way of compassionate release in the Eastern District of Virginia, pursuant to 18 U.S.C. § 3582(c)(1)(A). The district court granted Osman such relief in June 2023, reducing his life sentence to time served. *See United States v. Osman*, No. 2:10-cr-00057 (E.D. Va. June 1, 2023), ECF No. 725 (the "Release Order"). The Government has appealed from the Release Order, maintaining that the court abused its discretion in granting Osman's request for compassionate release. As explained herein, we agree and thus vacate the Release Order and remand.

I.

A.

In early 2010, Osman and six other Somali nationals acquired various weapons of war, including at least three AK-47 assault rifles and a rocket-propelled grenade launcher (an "RPG"). They intended to use a small wooden skiff and their weapons arsenal to violently seize and hold for ransom a merchant ship in the Gulf of Aden, which lies between the Arabian Peninsula and the Horn of Africa.

In the early hours of April 10, 2010, the Somalis approached in their skiff what they believed to be a merchant ship. They closed on the ship and began firing their AK-47s at it. Although they also sought to load and use the RPG, they were stymied by incompatible ammunition.

2

The targeted ship was in fact the USS *Ashland*, a U.S. Navy ship, which was then transporting Marines and military equipment. Navy personnel aboard the *Ashland* returned fire with two shots from a 25-mm machine gun loaded with armor-piercing incendiary shells. Those shots resulted in a fire on the skiff, killed one Somali, and grievously injured another. The six that survived — including Osman — suffered serious burns and abandoned the skiff. They were then rescued and apprehended by the *Ashland* and its Navy personnel.[1]

The *Ashland* transported the captured individuals to the Eastern District of Virginia, where they were each charged by the grand jury with, inter alia, piracy on the high seas, in contravention of 18 U.S.C. § 1651. Extensive judicial proceedings ensued, including the Government's interlocutory appeal to this Court contesting the district court's dismissal of the § 1651 piracy charge against Osman and his fellow conspirators. In May 2012, we relied on our simultaneously released decision in *United States v. Dire*, 680 F.3d 446 (4th Cir. 2012), to vacate that dismissal and then remand for further proceedings. *See United States v. Said*, 680 F.3d 374, 375 (4th Cir. 2012). Thereafter, at the conclusion of a six-day trial in February 2013, the jury found Osman guilty of piracy on the high seas and eight other offenses.[2]

---

[1] The facts and circumstances surrounding the efforts of Osman and his fellow conspirators to seize the USS *Ashland* are explained in further detail in our 2015 decision in *United States v. Said*, 798 F.3d 182, 186-88 (4th Cir. 2015).

[2] In additional to piracy on the high seas, the jury found Osman guilty of the following eight offenses: (1) conspiracy to commit hostage taking, in violation of 18 U.S.C. § 1203(a); (2) conspiracy to commit kidnapping, in violation of 18 U.S.C. (Continued)

Prior to Osman's being sentenced, the district court ruled that the life sentence mandated by § 1651 would contravene his Eighth Amendment rights. *See* 18 U.S.C. § 1651 (providing that "[w]hoever, on the high seas, commits the crime of piracy as defined by the law of nations, and is afterwards brought into or found in the United States, shall be imprisoned for life"). Instead of imposing a life sentence, the court sentenced Osman to an aggregate of 360 months in prison, including 240 months for the offense of piracy on the high seas.

On appeal, we reversed the district court's Eighth Amendment ruling, vacated Osman's 360-month sentence, and remanded the case for resentencing. *See United States v. Said*, 798 F.3d 182, 200 (4th Cir. 2015). Thereafter, the court sentenced Osman to life in prison under § 1651, to be followed by a 120-month consecutive sentence that was imposed for an 18 U.S.C. § 924(c)(1)(A) firearm offense.[3]

---

§ 1201(c); (3) conspiracy to perform an act of violence against persons on a vessel, in violation of 18 U.S.C. § 2291(a)(9); (4) conspiracy to use and possess a firearm during a crime of violence, in violation of 18 U.S.C. § 924(o); (5) attack to plunder a vessel, in violation of 18 U.S.C. § 1659; (6) assault with a dangerous weapon on federal officers and employees, in violation of 18 U.S.C. § 111(a)(1) and (b); (7) act of violence against persons on a vessel, in violation of 18 U.S.C. § 2291(a)(6); and (8) use and possession of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

[3] In early 2021, Osman filed a motion seeking compassionate release from the district court. The court denied Osman's motion in July 2021. *See United States v. Osman*, No. 2:10-cr-00057 (E.D. Va. July 27, 2021), ECF No. 641. Osman appealed the denial to this Court, and by an unpublished decision of February 2022, we vacated and remanded for further consideration. *See United States v. Osman*, No. 21-7150, 2022 WL 485183, at *1-2 (4th Cir. Feb. 17, 2022) (per curiam). Rather than continuing with that motion, however, Osman opted to file the new request for compassionate release at issue in this appeal.

4

B.

The compassionate release request underlying this appeal was filed in the district court in January 2023, with the assistance of Osman's court-appointed counsel. The relevant statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a sentencing court to reduce a sentence that has already been imposed, if it (1) finds that "extraordinary and compelling reasons warrant such a reduction," and (2) "consider[s] the factors set forth in [18 U.S.C. §] 3553(a)."[4]

By its Release Order of June 1, 2023, the district court granted Osman's compassionate release motion and reduced his sentence to time served — approximately 13 years. In so ruling, the court described Osman's argument as being that the § 3553(a) factors of "his personal history and the nature of the offense present extraordinary and compelling reasons to reduce his sentence." *See* Release Order 9. The court then endorsed that theory and awarded the requested relief. *Id.* at 9-13.

The district court began its analysis by addressing the § 3553(a) factor of the nature and circumstances of the offense. *See* Release Order 9. According to the Release Order, that factor "weigh[s] in favor of compassionate release," in that "[n]ot only did [Osman]

---

[4] Before moving for compassionate release in a district court, a defendant must first "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022). Osman has satisfied that exhaustion requirement.

5

and his co-conspirators cause no physical harm . . . but also the geo-political circumstances in Somalia that engendered piracy have shifted dramatically." *Id.* at 11.

The Release Order then turned to "the remaining § 3553(a) factors" and credited Osman's "need for medical attention" for "kidney and other related medical issues"; his rehabilitative efforts while incarcerated, including beginning to learn English, maintaining a cleaning job, and incurring no disciplinary infractions; and his plans to return to Somalia and support his ailing mother and his four children there. *See* Release Order 11-12. Osman's release plans also convinced the district court "that he is unlikely to recidivate and that the public will be protected." *Id.* at 13.

In a concluding paragraph, the Release Order ruled that "the § 3553(a) factors strongly weigh in [Osman's] favor and his release would not undermine the respect for law or provide inadequate deterrence." *See* Release Order 13. Finally, that ruling was followed by the district court's identification of the same favorable § 3553(a) factors — specifically, "the dramatic shift in geo-politics, the fact that the underlying crime caused no physical harm to the occupants of the USS *Ashland* [and] nothing was seized from the ship, [Osman's] evident rehabilitation, and [his] release plan to provide for his family" — as the "extraordinary and compelling reasons" to award the relief sought. *Id.*

The Government timely noted this appeal from the Release Order, and we possess jurisdiction pursuant to 28 U.S.C. § 1291. On June 9, 2023, on motion by the Government, this Court stayed the Release Order during the pendency of the appeal.

6

## II.

We review for abuse of discretion a district court's decision to grant a motion for compassionate release. *See United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024). A court abuses its discretion when it "acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *Id.*

## III.

On appeal, the Government principally maintains that the district court fatally erred in failing to properly conduct its compassionate release analysis under 18 U.S.C. § 3582(c)(1)(A). Specifically, the Government contends — and we agree — that the court impermissibly collapsed the threshold "extraordinary and compelling reasons" inquiry into its consideration of the 18 U.S.C. § 3553(a) factors.[5]

## A.

A motion under § 3582(c)(1)(A) — commonly referred to as a motion for compassionate release — is a narrow means for a district court to modify a term of imprisonment that has already been imposed, an act which the courts are generally barred from undertaking. *See* 18 U.S.C. § 3582(c). To determine whether such relief is

---

[5] Although the Release Order reduced Osman's sentence from the mandatory penalty of life in prison to approximately 13 years, the Government does not maintain today that a district court could never reduce a piracy defendant's sentence below life in prison in a compassionate release proceeding.

appropriate, a "court must conduct a two-step analysis." *See United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023) (recognizing that court must analyze compassionate release motion "in two steps").

The first step to be addressed is whether the defendant is eligible for a sentence reduction, which requires a district court to determine: "(1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023).[6] If the first step is satisfied, the court proceeds to the second step, where it is obliged to assess whether a sentence modification is appropriate under the factors outlined in § 3553(a), i.e., the factors generally considered when a court imposes a sentence. Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors "[o]nly after" conducting the first step's analysis. *Id.*; *see also Centeno-Morales*, 90 F.4th at 279.

Our Court has consistently required the foregoing two-step framework and emphasized that the movant must satisfy "two separate criteria" to be entitled to

---

[6] The November 1, 2018 policy statement of the Sentencing Commission — U.S.S.G. § 1B1.13 — was in effect when the district court resolved Osman's compassionate release motion. It related only to motions filed by the Director of the Bureau of Prisons. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020). On November 1, 2023, § 1B1.13 was amended to extend its coverage to compassionate release motions filed by a prisoner. That amendment was not in effect at the time of the Release Order, however, and there was thus no applicable policy statement for the district court to then consider.

compassionate release. *See United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *see also Malone*, 57 F.4th at 173; *Bond*, 56 F.4th at 383-84. It is critical that the two distinct steps be adhered to, because collapsing the steps will diminish the "heightened standard," which authorizes a sentence reduction only in "truly extraordinary and compelling cases." *Cf. United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020). To proceed otherwise risks turning § 3582(c)(1)(A) into a simple resentencing provision, swallowing the general statutory mandate that a sentencing court may not modify a sentence after it has been imposed. *See* 18 U.S.C. § 3582(c).

## B.

Having carefully assessed the Release Order, we are satisfied that the district court abused its discretion by addressing the two mandatory steps in the wrong order and then impermissibly collapsing them. That is, the court relied on its initial — and routine — analysis of the § 3553(a) factors as the extraordinary and compelling reasons to reduce Osman's sentence. Thus, the Release Order erroneously failed to distinguish between extraordinary and compelling reasons, on the one hand, and the § 3553(a) factors, on the other.[7]

---

[7] We recognize that a court is entitled to consider certain facts during the first step of the compassionate release analysis — i.e., extraordinary and compelling reasons — and then again consider those facts in weighing the § 3553(a) factors at the second step. *See, e.g.*, *United States v. Mangarella*, 57 F.4th 197, 204 (4th Cir. 2023) (ruling it proper to consider serious health conditions at both first and second steps). The court should not, however, conflate the separate steps. It should address the inquiries individually and sequentially.

9

Put succinctly, the Release Order contravened our compassionate release framework and impermissibly entangled the two steps of the analysis. The district court thus abused its discretion and erred in reducing Osman's sentence.

IV.

Pursuant to the foregoing, we vacate the Release Order granting Osman's compassionate release motion and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*